Dan Lawton (SBN 127342)
**LAWTON LAW FIRM**
Emerald Plaza
402 West Broadway, Suite 1330
San Diego, California 92101
619.595.1406 (telephone)
619.595.1520 (facsimile)
619.459.2420 (mobile)
dan@lawtonlaw.com

***ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASSES***

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SANDY MYERS, a natural person,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE CROSS OF CALIFORNIA (D/B/A ANTHEM BLUE CROSS), a California corporation, and ANTHEM, INC., an Indiana corporation,<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT FOR:**<br><br>(1) Negligence;<br>(2) Negligence *per se*;<br>(3) Breach of Express or Implied Contract;<br>(4) Quasi-Contract / Unjust Enrichment;<br>(5) Violation of California's Data Breach Law (Cal Civ. Code §§ 1798, *et seq.*); and<br>(6) Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Upon personal knowledge as to her own acts and status, and based upon her investigation, her counsel's investigation, and information and belief as to all other matters, plaintiff Sandy Myers, on behalf of herself and all others similarly situated, allege as follows:

**SUMMARY OF ACTION**

1. This is a class action brought on behalf of current and former customers of Anthem Blue Cross and Anthem, Inc. (collectively "Anthem") who had their personally identifiable information ("PII") stolen by criminals as a direct result of Anthem's failure to adhere to reasonable, industry-standard security practices.

2. On February 4, 2015, Anthem announced that hackers had breached the company's information technology database systems ("the Breach") and obtained the PII of approximately 80 million current and former Anthem health-insurance plan customers and Anthem's employees. As a result, the attackers obtained names, birthdays, Social Security Numbers, street addresses, email addresses, employment information, and income data. Anthem also indicated that it could provide "no assurance" that additional information was not obtained, which could include medical information or credit-card data.

3. Anthem had statutory, contractual and common law obligations to protect the PII of its customers, yet failed at every step to prevent, detect, or limit the scope of the Breach. The health insurance industry has been repeatedly warned about the risk of cyber-attacks, and Anthem itself has been the victim of earlier attacks. Nonetheless, amongst other things, Anthem: (i) failed to design and use an alternative method to identify its customers other than by using their social security numbers; (ii) failed to implement security measures designed to prevent unauthorized access to its computer databases housing customer information, (iii) failed to employ security protocols to detect unauthorized access to its networks and computer databases housing customer information, and (iv) failed to maintain basic security measures such as data encryption, so that even if its data was accessed or stolen, it would be unreadable by those accessing it without authorization.

4. Anthem concealed the weaknesses in its security systems, negligently or recklessly failed to safeguard their consumers' data, breached their implied and express contracts, and violated California statutes, including the California Data Breach Act, Cal. Civ. Code §§ 1798.80, *et. seq.*,

1

and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq*. As a direct result of the Breach, plaintiffs and the Class suffered damages, including, *inter alia*, (i) money paid to Anthem that was supposed to be used to protect the PII from unauthorized access; (ii) the costs associated with the detection and prevention of identity theft and unauthorized use of their personal and financial information, and (iii) the imminent and impending costs from future fraud and identity theft.

5.     Had Anthem disclosed that it lacked adequate security systems to safeguard customer data, Plaintiff and Anthem's other customers either would not have purchased Anthem's health insurance or would have paid substantially less for Anthem's health insurance. Moreover, Plaintiff's and Anthem's customers' PII remains in Anthem's possession which is subject to subsequent breaches so long as Anthem fails to secure its computer systems, making injunctive and declaratory relief appropriate.

## PARTIES

6.     Plaintiff Sandy Myers is a natural person and a citizen of the State of California, and had health insurance through defendant Blue Cross of California through her now ex-husband's employer until 2012. Ms. Myers saw news reports describing the Breach which indicated that both current and former Anthem customers' information had been accessed and stolen, and was eventually notified that her information may have been taken in the Breach.

7.     Defendant Anthem, Inc. is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Anthem maintains extensive contacts within the State of California. Anthem, Inc. sells health insurance to California residents, maintains offices in California, employs workers in California, and advertises in California.

8.     Defendant Blue Cross of California, doing business under the trade name Anthem Blue Cross, is a California corporation with its principal place of business in Indianapolis, Indiana. Blue Cross of California maintains extensive contacts within the State of California, sells health insurance to California residents, maintains offices in California, employs workers in California, and advertises in California.

Class Action Complaint;
Case No.:

**JURISDICTION AND VENUE**

9.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a class action with more than 100 class members in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, in which members of the class of plaintiffs are citizens of states different from Defendants.

10.     This Court has personal jurisdiction over Anthem, Inc. and Blue Cross of California because Defendants have sufficient minimum contacts with California and Defendants otherwise purposely avail themselves of the markets in California by selling insurance in California and to California residents, by maintaining offices in California, by employing Californians, and by advertising in California. Anthem, Inc.'s and Blue Cross of California's purposefully availed themselves of the markets in California rendering the exercise of personal jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper within this judicial District pursuant to 28 U.S.C. §1391.  Defendants are subject to personal jurisdiction within this District as they transact business and are found within this District, a substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in this District, and affected persons whose PII was stolen reside or resided in this District. Defendants sell insurance within this District, Defendants maintain offices within this District, Defendants have employees within this District, and Defendants advertise within this District. Moreover, Plaintiff's insurance was purchased through an employer within this District.

**FACTUAL ALLEGATIONS**

12.     Anthem, formerly known as WellPoint, is ranked 38th on the Fortune 500 list of top U.S. corporations and one of the three largest health insurers in the United States.[1]

13.     Anthem markets and sells insurance directly to millions of consumers throughout the country through its website.  In California, Anthem sells health insurance under the trade name Anthem Blue Cross, and through its wholly-owned subsidiary Blue Cross of California.

---

[1] http://fortune.com/fortune500/.

3

Class Action Complaint;
Case No.:

14.     Anthem requires its health insurance customers to provide their PII when applying for health insurance, or when joining an existing health plan.  The PII Anthem requires of its health insureds includes, *inter alia*, full legal names, street addresses, email addresses, telephone numbers, dates of birth, Social Security Numbers, employer and employment information, and income information.

15.     Anthem, like other health insurers, is obligated to keep customers' personal, health and financial information private and secured and is aware of its obligations.  Anthem is also acutely aware of the highly sensitive nature of the PII it collects.  On its website, Anthem states:

> **Personal Information (Including Social Security Number) Privacy Protection Policy**[2]
>
> Anthem Blue Cross and Blue Shield maintains policies that protect the confidentiality of personal information, including Social Security numbers, obtained from its members and associates in the course of its regular business functions. Anthem Blue Cross and Blue Shield is committed to protecting information about its customers and associates, especially the confidential nature of their personal information (PI).
>
> Personal Information is information that is capable of being associated with an individual through one or more identifiers including but not limited to, a Social Security number, a driver's license number, a state identification card number, an account number, a credit or debit card number, a passport number, an alien registration number or a health insurance identification number, and does not include publicly available information that is lawfully made available to the general public from federal, state or local government records or widely distributed media.
>
> - Anthem Blue Cross and Blue Shield is committed to protecting the confidentiality of Social Security numbers and other Personal Information.
> - Anthem Blue Cross and Blue Shield 's Privacy Policy imposes a number of standards to:
>   - guard the confidentiality of Social Security numbers and other personal information,
>   - prohibit the unlawful disclosure of Social Security numbers, andlimit access to Social Security numbers.
>
> …
>
> Anthem Blue Cross and Blue Shield safeguards Social Security numbers and other personal information by having physical, technical, and administrative safeguards in place.

16.     Anthem's Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Notice of Privacy Protection also tells its customers:

---

[2] https://www.anthem.com/health-insurance/about-us/privacy (last accessed March 18, 2015).

4

We are dedicated to protecting your [personal health information], and have set up a number of policies and practices to help make sure your [personal health information] is kept secure

…

We keep your oral, written and electronic [personal health information] safe using physical, electronic, and procedural means. These safeguards follow federal and state laws. Some of the ways we keep your [personal health information] safe include securing offices that hold [personal health information], password-protecting computers, and locking storage areas and filing cabinets. We require our employees to protect [personal health information] through written policies and procedures. These policies limit access to [personal health information] to only those employees who need the data to do their job. Employees are also required to wear ID badges to help keep people who do not belong out of areas where sensitive data is kept. Also, where required by law, our affiliates and nonaffiliates must protect the privacy of data we share in the normal course of business. They are not allowed to give [personal health information] to others without your written OK, except as allowed by law and outlined in this notice.[3]

17.     Anthem's privacy and HIPPA policies demonstrate that Anthem is and was well aware of the need to protect Anthem's customers' PII, including Social Security Numbers.  Anthem was and remains obligated to use every reasonable means available to protect its customers' PII from being accessed by unauthorized persons, including those who accessed Anthem's computers in the Breach.

18.     Anthem does not need to maintain its customers Social Security Numbers.  Other health insurance companies, including other members of the "Blue" health insurance network, erase Social Security Numbers and birthdates from their electronic records[4], and stopped using Social Security Numbers to identify customers more than a decade ago, relying instead on unique identifying numbers created by the company to identify their insureds.[5]

---

[3]     https://www.anthem.com/health-insurance/nsecurepdf/english_common_11832ANMEN    (last accessed March 18, 2015).

[4] Bill Toland, *Highmark: 51,000 Pennsylvania customers affected by Anthem data breach,* Pittsburgh Post-Gazette (March 11, 2015), available at http://www.post-gazette.com/business/healthcare-business/2015/03/11/Highmark-51-000-of-its-Pa-customers-affected-by-Anthem-breach/stories/201503110184;

[5] Available at http://www.post-gazette.com/attachment/2015/03/11/PDF-Highmark-s-letter-to-customers-Anthem-data-hack-breach.pdf.

5

1       19.    Moreover, Anthem had and has no reasonable basis for maintaining its former health

2   insurance customers' PII.  By maintaining former customers' PII, Anthem unnecessarily exposed

3   those persons to the risk associated with a data breach.

4       20.    The health insurance industry was warned multiple times in recent years of the risk

5   concerning the security of insureds PII.  According to a SANS Analyst Whitepaper from February

6   2014 titled, "Health Care Cyberthreat Report: Widespread Compromises Detected, Compliance

7   Nightmare on Horizon," healthcare providers, including insurance companies, were regular targets

8   of cyber-attacks, and particularly vulnerable to them.[6]

9       21.    On April 8, 2014, the FBI warned health care systems that cyber-attacks were likely

10   to occur, in part, due to lax cybersecurity standards and a high desire and financial payout for

11   medical information on the black market.[7]  The FBI's warning concluded, "[t]he healthcare industry

12   is not as resilient to cyber intrusions compared to the financial and retail sectors, therefore the

13   possibility of increased cyber intrusions is likely."

14       22.    In August 2014, after a cyber-attack on Community Health Systems, Inc., the FBI

15   again warned health-insurance and health-care companies that hackers were targeting them. The

16   warning noted that "[t]he FBI has observed malicious actors targeting healthcare related systems,

17   perhaps for the purpose of obtaining Protected Healthcare Information (PHI) and/or Personally

18   Identifiable Information (PII)."[8]

19       23.    Anthem itself has a history of failing to adequately protect its customer's personal

20   information.  Prior to the Breach, Anthem was hacked several different times.  In 2007, names,

21   Social Security Numbers and other information of 196,000 Anthem customers was stolen from

---

[6] Accessible at http://norse-corp.com/HealthcareReport2014.html.

[7] *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain*, Private Industry Notification, FBI Cyber Division, available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf.

[8] Jim Finkle, *FBI Warns Healthcare Firms They Are Targeted by Hackers*, Reuters (Aug. 20. 2014), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbiidUSKBN0GK24U20140820.

Class Action Complaint;
Case No.:

1    Anthem by one of its contractors.[9]  In 2011, Anthem settled an action alleging it stored customers'

2    PII and credit card numbers on its website without encryption or password protection.[10]  In 2013,

3    Anthem agreed to pay $1.7 million to resolve allegations it left private information of more than

4    612,000 customers available online because of inadequate safeguards.[11]

5        24.    In light of its prior failings to maintain adequate security of its customers' PII, as well

6    as warnings to the industry that cyber-thieves were targeting companies in the healthcare industry,

7    Anthem knew or should have known that its security was inadequate to prevent a targeted attack on

8    its servers.

9        25.    Despite the warnings and Anthem's own prior experiences, on February 4, 2015

10   Anthem announced its data servers were breached and Anthem's failure to secure and protect its

11   customers' PII  resulted in the theft of up to 80 million current and former customers' and

12   employees' PII being stolen.[12]  The Breach has been called one of the largest breach of a healthcare

13   company, and maybe the largest ever of customer information.

14       26.    Despite Anthem's suggestion that it discovered the breach had occurred in January,

15   Anthem registered the domain used to announce the Breach, www.anthemfacts.com, on December

16   13, 2014, suggesting it knew of the Breach at that time, and cybersecurity experts suspect the Breach

17   began as early as April of 2014.[13]

18       27.    As part of the Breach, cyber-thieves obtained Anthem's current and former

19   customers' names, birthdays, SSNs, street addresses, email addresses, employment information, and

20   income data. In its annual filing with the Securities and Exchange Commission on February 24,

---

[9] David Hakala, *The Worst IT Security Breaches of 2007*, It Security (Jan. 22, 2008),
http://www.itsecurity.com/features/top-security-breaches-2007-012208/.

[10] *See* http://www.consumer-action.org/index.php/alerts/articles/wellpoint_anthem_class_action.

[11] Tom Murphy, *Health Insurer Anthem Hit by Massive Data Breach*, The Boston Globe (Feb. 5,
2015), https://www.bostonglobe.com/business/2015/02/05/health-insurer-anthem-hit-massivedata
breach/bObb3wwN6cMYXVgOYXRyCL/story.html.

[12] *See* www.anthemfacts.com.

[13] *See* http://krebsonsecurity.com/2015/02/anthem-breach-may-have-started-in-april-2014/.

Class Action Complaint;
Case No.:

2015, Anthem also indicated that it could provide "no assurance" that additional information was not obtained, which could include medical information or credit-card data.[14]

28.     The Breach, and much of the information stolen, was preventable.  Anthem did not take the minimal step of encrypting the PII stolen.  Had Anthem encrypted the PII in its databases, even if the information was stolen it would have been unreadable by cyber-thieves.  However, by failing to encrypt the data, it was easily readable by anyone who accessed it, including the cyber-thieves who accessed it during the Breach.

29.     Anthem did not remove its former customers' PII form its active servers after they were no longer Anthem's customers.  Anthem could and should have erased former customers' PII form its active databases, and had no legitimate business reason to maintain former customers' PII on its active servers.  To the extent Anthem was required to maintain prior customers' information, it could have maintained it in archived form on non-active servers.

30.     Anthem also did not use unique identifiers for its customers in lieu of Social Security Numbers, or erase Social Security Numbers and other PII when it was not needed.  Anthem could and should have erased its customers' Social Security Numbers, using instead unique identifiers that, if stolen, could not have been used for any other purpose than identification of the person to Anthem.

31.     Anthem could and should have – but did not – require industry-standard secure authentication protocols to access its computer systems containing its customers' PII.  Access to Anthem's complete customers' records database was available through a "one-factor" authentication process – i.e., a single username and password would grant access to all of the information taken in the Breach.  Thus, cyber-thieves needed only steal or determine one login/password combination to pull off one of the largest cyber-thefts in U.S. history.  This could have been avoided entirely if Anthem used an industry-standard "two-factor" authentication process that would have required an additional, randomly generated code provided by the user's personal device such as a cell phone or electronic keycard to access the protected information.

---

[14] Form 10-K for FY2014 at p. 129, Anthem, Inc., U.S. SECURITIES AND EXCH. COMM'N (Feb. 24, 2015), available at http://ir.antheminc.com/phoenix.zhtml?c=130104&p=irol-sec#9946260.

Class Action Complaint;
Case No.:

32.     Anthem also did not notify its current and former customers of the breach in a timely manner.  Under California and other states' similar data-breach notification laws, businesses are required to notify their customers of a breach of unencrypted personal information without unreasonable delay, unless such notification would impede a criminal investigation.  Despite admitting that it knew of the Breach as late as January 30, 2015, and probably knowing about it as early as December 13, 2014 if not months before then, Anthem waited months before notifying the vast majority of the nearly 80 million persons whose PII was taken in the Breach.

33.     As a result of the Breach, Plaintiff and Class Members have or will likely suffer imminent injuries.

34.     Unlike other security breaches that have been widely publicized such as happened to Target and Home Depot, the Breach that Anthem allowed to occur involved more personal information such as Social Security Numbers, and potentially private and sensitive health information, that can be must to perpetrate much more serious and long-lasting identity theft crimes. Where a credit card can be cancelled, avoiding any future use of it by a cyber-thief, it is nearly impossible to change one's Social Security Number to avoid identity theft, and extremely stressful and time-consuming for a victim of identity theft to fix their credit and name after such a change.

35.     Cyber-thieves with a person's Social Security Number can (i) open financial accounts and incur charges in the victim's name; (ii) take out loans in the victim's name; (iii) file tax returns in the victim's name; (iv) obtain medical services using the victim's information; (iv) obtain government benefits posing as the victim; (v) obtain driver's license or other identification cards in the victim's name; and (iv) provide the victim's information to law enforcement during an arrest.

36.     Plaintiff's and other victims of the Breach can have their credit profile destroyed before they realize they have been the victim of identity theft, making it difficult, if not impossible, for them to borrow money, obtain credit, open bank accounts, or possibly obtain employment.

37.     Victims of the Breach can also have their tax refunds taken, or be subject to state or federal tax investigations due to multiple tax returns being filed in their name.  Indeed, there have already been reports of identity theft – including the filing of false tax returns in victims' names – that have been linked to the Breach. Fifty (50) employees of Western Kentucky University reported

9

fraudulent tax returns filed with their names, in which the victims felt was as a result of the Breach.[15] Similarly, at least 17 employees of Ball State University have reported their identities stolen as a result of the Breach.[16]

38.     Had Plaintiff and Anthem's current and former customers known that Anthem failed to follow industry-standard protocols to protect the PII entrusted to it, they would not have purchased health insurance from Anthem or would have paid substantially less.

39.     Anthem failed to disclose to Plaintiff and members of the classes defined below that Anthem: (i) does not erase or archive PII for its former customers; (ii) does not use two-factor authentication to protect personal information stored on its computer systems; and (iii) does not use encryption to protect its customers' sensitive PII.

40.     Had Anthem adequately disclosed the above, the value of its health-insurance products would be substantially less and Anthem's customers overpaid for Anthem health insurance and have incurred substantial monetary damages.

## CLASS ACTION ALLEGATIONS

41.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action as a national class action for herself and all members of the following "Nationwide Class" of similarly situated individuals:

> All persons in the United States whose personal, health or financial information was compromised by the Breach disclosed by Anthem on February 4, 2015.

42.     Excluded from the Nationwide Class are Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.

---

[15] Justin Story, *Anthem offering clients ID help - Customers to receive info in mail on breach* (February 28, 2015) available at http://www.bgdailynews.com/news/anthem-offering-clients-id-help/article_01e9e821-ad97-59c7-8e28-bb22faa87520.html.

[16] Associated Press, *Ball State Staff Report Identity Thefts, Suspect Anthem Hack* (March 4, 2015) available at http://diverseeducation.com/article/70302/.

Class Action Complaint;
Case No.:

43. Plaintiff also seeks to certify the following subclass of the Nationwide Class (the "California Subclass") as follows:

> All persons of the Class who are residents of California or purchased health insurance from Blue Cross of California.

44. Excluded from the California Subclass are Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.

45. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46. All members of the proposed Nationwide Class and California Subclass are readily ascertainable. Anthem has access to addresses and other contact information for all members of the Nationwide Class and California Subclass, which can be used for providing notice to members of the classes.

47. The Nationwide Class and California Subclass are so numerous that joinder of all members is impractical. Anthem admitted that records for nearly 80 million current and former customers were taken in the Breach, and California is the state with the largest number of current and former Anthem customers.

48. Questions of law and fact common to all members of the Nationwide Class and California Subclass exist and predominate over any questions affecting only individual members of the classes, including, *inter alia*:

   a. Whether Anthem engaged in the wrongful conduct alleged herein;

   b. Whether Anthem's conduct was deceptive, unfair, unconscionable and/or unlawful;

   c. Whether Anthem owed a duty to Plaintiff and members of the Nationwide Class and California Subclass to adequately protect their personal, health, and financial information;

   d. Whether Anthem owed a duty to provide timely and accurate notice of the Breach to Plaintiff and members of the Nationwide Class and California Subclass;

11

Class Action Complaint;
Case No.:

e.  Whether Anthem breached its duties to adequately protect Plaintiff's and National Class and/ California Subclass members' personal, health and financial information, or to timely or accurately provide notice of Anthem's data breach;

f.  Whether Anthem's conduct was likely to deceive a reasonable person;

g.  Whether Anthem knew or should have known that its computer databases were vulnerable to attack;

h.  Whether Anthem's conduct, including its failure to act, resulted in or was the proximate cause of the Breach;

i.  Whether Anthem failed to timely and accurately disclose that its databases were not adequately secured, or that the Breach had occurred;

j.  Whether Anthem's actions and failures to act were the proximate cause of harm to Plaintiff and members of the classes;

k.  Whether Plaintiff and members of the classes suffered injury as a result of Anthem's conduct or failure to act; and

l.  Whether Plaintiff and members of the classes are entitled to damages, restitution and/or equitable relief.

49.    Plaintiff's claims are typical of the claims of the Nationwide Class and California Subclass.  Plaintiff has no interest antagonistic to, or in conflict with, the interests of members of the Nationwide Class or California Subclass.  Plaintiff hired counsel who are experienced in the prosecution of complex commercial actions such as this one.  Plaintiff and her counsel will adequately protect the interest of the classes.

50.    A class action is superior to other available methods for fairly and efficiently adjudicating the claims of Plaintiff and members of the classes.  Plaintiff and Nationwide Class and California Subclass members have been harmed by Anthem's actions and inactions.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Anthem's wrongful actions and/or inaction.

51.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual members of the Nationwide Class or California Subclass would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.  Moreover, adjudication by individual members of the classes, as a practical matter, would be dispositive of the interests of the other

members of the classes not party to an individual action, and an individual action would substantially impair or impede their ability to protect their interests.

52. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Anthem has acted or refused to act on grounds generally applicable to the Nationwide Class and California Subclass, so that final injunctive relief and corresponding declaratory relief is appropriate to the Class as a whole.

53. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because above common questions of law or fact predominate over any questions affecting individual members of the classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

54. The expense and burden of litigation would substantially impair the ability of Plaintiff and members of the classes to pursue individual lawsuits to vindicate their rights. Absent a class action, Anthem will retain the benefits of its wrongdoing despite its serious violations of the law.

## COUNT I
### Negligence

55. Plaintiff, individually and on behalf of the Nationwide Class, incorporates all of the allegations contained in the preceding paragraphs of this Complaint by reference.

56. By accepting Plaintiff's and Nationwide Class members' non-public personal information, Anthem assumed a duty to use reasonable care to secure such information against theft and misuse.

57. Anthem breached its duty of care by failing to adequately secure and protect Plaintiff's and Nationwide Class members' personal information from access, theft and misuse.

58. Anthem breached its duty of care by failing to timely and accurately informing Plaintiff and Nationwide Class members that their non-public personal information had been accessed and stolen by unauthorized persons.

59. Anthem breached its duty of care to Plaintiff and members of the Nationwide Class by maintaining and utilizing customers' Social Security Numbers rather than using another unique identifier that could not be used for any purpose other than Anthem's insurance.

60.     Anthem breached its duty of care to its former customers by failing to erase non-public personal information of non-customers from its active databases.  There was no legitimate business reason for Anthem to maintain non-customers' personal information on its active computer databases.

61.     As a direct and proximate result of Anthem's failures to adequately protect Plaintiff's and Nationwide Class members' personal non-public information placed in its care, failure to use an identifier for customers rather than their Social Security Numbers, failure to erase former customers' personal information from its live databases, and failure to timely and adequately notify Plaintiff and Nationwide Class members about the Breach, Plaintiff and Nationwide Class members were injured in fact.  Such injuries include, *inter alia*, identity theft; damage to credit scores, time and expense related to finding fraudulent accounts, monitoring their identity, monitoring tax filings, nuisance and annoyance dealing with all of the issues resulting from the Breach, and costs associated with the loss of productivity from time ameliorating the actual and future consequences of the Breach.

**COUNT II**
**Negligence *per se***

62.     Plaintiff, individually and on behalf of the Nationwide Class, incorporates all of the allegations contained in the preceding paragraphs of this Complaint by reference.

63.     Anthem had a duty to keep and protect the non-public personal information of its customers pursuant to the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, *et seq.*

64.     Anthem had a duty to keep and protect the non-public personal information if its customers pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.*

65.     Anthem had a duty to keep and protect the non-public personal information if its customers pursuant to California's Data Breach Act, Cal. Civ. Code §§ 1998.80, *et seq.*

66.     Anthem violated its duty to keep and protect the non-public personal information of its current and former customers, violating the Gramm-Leach-Bliley Act, HIPAA, California's Data Breach Act, and other states' similar laws and regulations.

14

67.     Anthem failed to comply with other industry standards, as well as state and federal laws and regulations meant to keep non-public personal information confidential and protected.

68.     Anthem's failure to comply with the Gramm-Leach-Bliley Act, HIPAA, California's Data Breach Act, and other state and federal laws and regulations and industry standards constitutes negligence *per se*.

69.     As a result of Anthem's negligence, Plaintiff and Nationwide Class members have been proximately harmed and injured in the ways described herein.

**COUNT III**
**Breach of Express or Implied Contract**

70.     Plaintiff, individually and on behalf of the Nationwide Class, incorporates all of the allegations contained in the preceding paragraphs of this Complaint by reference.

71.     Plaintiff and members of the Nationwide Class provide their non-public, financial and personal information to Anthem in exchange for, or in order to receive, Anthem's services.

72.     Anthem expressly or impliedly agreed to safeguard, protect and maintain private Plaintiff's and Nationwide Class members' non-public, financial and personal information from being accessed, taken or misused by unauthorized persons.

73.     Each purchase of Anthem's insurance or services by Plaintiff and Nationwide Class members were made pursuant to the mutually agreed upon express or implied contract with Anthem to safeguard, protect and maintain private Plaintiff's and Nationwide Class members' non-public, financial and personal information from being accessed, taken or misused by unauthorized persons.

74.     Plaintiff and Nationwide Class members would not have provided their non-public, personal and financial information to Anthem, or entrusted Anthem with such information, absent the express or implied agreement by Anthem to safeguard, protect and maintain private Plaintiff's and Nationwide Class members' non-public, financial and personal information from being accessed, taken or misused by unauthorized persons.

75.     Plaintiff and Nationwide Class members fully performed their obligations under the express or implied contracts with Anthem.

15

76.     Anthem breached its express or implied promises to safeguard, protect and maintain private Plaintiff's and Nationwide Class members' non-public, financial and personal information from being accessed, taken or misused by unauthorized persons.

77.     As a result of Anthem's breach of its express or implied promises, Plaintiff and Nationwide Class members have been proximately harmed and injured in the ways described herein.

**COUNT IV**
**Quasi-Contract / Unjust Enrichment**

78.     Plaintiff, individually and on behalf of the Nationwide Class, incorporates all of the allegations contained in the preceding paragraphs of this Complaint by reference.

79.     Plaintiff and members of the Nationwide Class conferred a monetary benefit on Anthem in the form of monies paid for the purchase of health insurance.

80.     Money paid by Plaintiff and Nationwide Class members to Anthem was supposed to be used, in part, for Anthem to adequately safeguard, protect and maintain private Plaintiff's and Nationwide Class members' non-public, financial and personal information.

81.     Anthem failed to provide adequate safeguards, protection or security to Plaintiff's and Nationwide Class members' personal and financial information.

82.     As a result of Anthem's failure to provide to provide adequate safeguards, protection or security to Plaintiff's and Nationwide Class members' personal and financial information, Plaintiff and Nationwide Class members overpaid for Anthem's insurance and services.

83.     Plaintiff and Nationwide Class members conferred Anthem with an economic benefit in the nature of monies Anthem received from Plaintiff and Nationwide Class members, in an amount of the money that should have been used to adequately safeguard, protect and maintain private Plaintiff's and Nationwide Class members' non-public, financial and personal information.

84.     The economic benefit given to Anthem by Plaintiff and Nationwide Class members rightfully belong to Plaintiff and Nationwide Class members.

85.     Equity and good conscience dictates that Anthem not be permitted to retain the money belonging to Plaintiff and Nationwide Class members because Anthem failed to provide adequate safeguards, protection or security to Plaintiff's and Nationwide Class members' personal

and financial information which Plaintiff and Nationwide class members paid for, but did not receive.

86.     Anthem should be compelled to disgorge into a common fund for the benefit of Plaintiff and Nationwide Class members all of the inequitable proceeds received by Anthem.

87.     A constructive trust should be imposed on all inequitable sums received by Anthem from Plaintiff and Nationwide Class members.

**COUNT V**
**Violations of the California Data Breach Act,**
**Cal. Civ. Code §§ 1798.80, *et seq.***

88.     Plaintiff, individually and on behalf of the California Subclass, incorporates all of the allegations contained in the preceding paragraphs of this Complaint by reference.

89.     Cal. Civ. Code § 1798.91.5(b) provides: A business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.

90.     Cal. Civ. Code § 1798.81 provides:  A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means.

91.     Cal. Civ. Code § 1798.82 provides, in relevant part:

(a) Any person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

(b) Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

17

(c) The notification required by this section may be delayed if a law enforcement agency determines that the notification will impede a criminal investigation. The notification required by this section shall be made after the law enforcement agency determines that it will not compromise the investigation.

92.    The Breach constituted a breach of Anthem's security system under the California Data Brach Act.

93.    Plaintiff's and California Subclass members' PII stolen in the Breach constitutes "personal information" under the California Data Brach Act.

94.    Anthem failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII taken in the Breach from unauthorized access, destruction, use, modification, or disclosure.

95.    Anthem had no reason to maintain the non-public, personal and financial information of its former customers, and such information was not to be retained by Anthem.

96.    Anthem failed to take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records were no longer to be retained by Anthem.

97.    Anthem unreasonably delated informing Plaintiff and California Subclass members about the Breach after Anthem knew the Breach had occurred.

98.    Anthem failed to disclose to Plaintiff and California Subclass members, without unreasonable delay and in the most expedient time possible, the breach of security of their PII when Anthem knew or reasonably believed such information had been compromised.

99.    No law enforcement agency determined that notification to Plaintiff and California Subclass members of the Breach would impeded any criminal investigation by a law enforcement agency.

100.   As a result of Anthem's violation of California's Data Breach Act, Plaintiff and Nationwide Class members have been proximately harmed and injured in the ways described herein.

18

**COUNT VI**
**Violations of the California Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

101.    Plaintiff, individually and on behalf of the California Subclass, incorporates all of the allegations contained in the preceding paragraphs of this Complaint by reference.

102.    Plaintiff suffered injury in fact and lost money or property as a result of Anthem's actions as set forth herein, and have standing to pursue an action under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*., ("UCL").

103.    Anthem's actions alleged in this Complaint constitute "unlawful" business practices as defined by the UCL as Anthem's actions violated the California Data Breach Act, the Gramm-Leach-Bliley Act, and HIPAA as described above.

104.    Anthem's actions alleged in this Complaint constitute "unfair" business practices as defined by the UCL.  Anthem had no legitimate business justification to, *inter alia*, (i) maintain the personal and financial information of its former customers on active databases; (ii) maintain and utilize customers' Social Security Numbers to identify people rather than a randomly-generated identification system; and (iii) failing to adhere to industry-standard data protection protocols such as data encryption and two-factor authentication.  The harm caused to Plaintiff and California Subclass members by Anthem's unfair conduct outweighs any business justifications Anthem might have had.

105.    Anthem's actions alleged in this Complaint constitute "fraudulent" business practices as defined by the UCL.  Anthem failed to adequately disclose its inability to adequately protect Plaintiff's and California Subclass members' personal and financial information, and instead falsely stated in its Privacy Policy and in other places that it would adequately protect customers' private information.  Anthem's material non-disclosures, and affirmative false statements, was likely to deceive a reasonable consumer who provided their sensitive, non-public personal and financial information to Anthem that it would provide adequate safeguards and protections from such information being accessed or stolen by unauthorized persons.

106.    As a result of Anthem's unfair, unlawful and fraudulent conduct in violation of California's UCL, Plaintiff and Nationwide Class members have been proximately harmed and

19

injured in the ways described herein and seek equitable relief to end Anthem's conduct that is in violation of the UCL, and an order requiring Anthem to make full restitution of all monies it has wrongfully obtained from Plaintiff and California Subclass members, along with all other relief permitted under the UCL.

## PRAYER

Plaintiff, on behalf of herself and all members of the Nationwide Class and California Subclass, requests that the Court order the following relief and enter judgment against Defendants as follows:

A.   An order certifying the proposed Nationwide Class and California Subclass under Fed. R. Civ. P. 23;

B.   An order appointing Plaintiff and her counsel to represent the Nationwide Class and California Subclass;

C.   A declaration that Defendants engaged in the illegal conduct alleged herein;

D.   An order that Defendants be permanently enjoined from their improper and illegal conduct alleged herein;

E.   A judgment awarding Plaintiff, the Nationwide Class and California Subclass any compensatory, statutory and punitive damages in amounts to be proven at trial for all Counts they are available;

F.   A judgment awarding Plaintiff, the Nationwide Class and California Subclass equitable relief in the amount and form to be proven at trial for all Counts it is available;

G.   Pre- and Post-judgment interest at the maximum allowable rate;

H.   Attorneys' fees and expenses and the costs incurred in bringing this action; and

I.   All other relief that the Court deems necessary, just and proper.

Class Action Complaint;
Case No.:

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims and/or issues so triable.

DATED:  April 20, 2015                    Respectfully Submitted,


                                           /s/Dan Lawton
                                              Dan Lawton

                                           Dan Lawton (SBN 127342)
                                           **LAWTON LAW FIRM**
                                           Emerald Plaza
                                           402 West Broadway, Suite 1330
                                           San Diego, California 92101
                                           619.595.1406 (telephone)
                                           619.595.1520 (facsimile)
                                           619.459.2420 (mobile)
                                           dan@lawtonlaw.com


                                           ***ATTORNEYS FOR PLAINTIFF***
                                           ***AND THE PROPOSED CLASSES***

Class Action Complaint;
Case No.: